UNITED STATES BANKRUPTCY COURT

DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| In re<br><br>DANIEL M. DRUMHELLER and<br>LOIS F. DRUMHELLER,<br><br>                              Debtors | Chapter 7<br>Case No. 15-14896-FJB |

**MEMORANDUM OF DECISION ON**
**TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION IN IRA ANNUITY [Doc. #28]**

In the above-entitled chapter 7 case, debtor Daniel Drumheller (individually, "the Debtor"; with his spouse and joint debtor, "the Debtors") has claimed as exempt, under 11 U.S.C. § 522(b)(3)(C) and MASS. GEN. LAWS ch. 235, § 34A, his interests in three annuity contracts with Allianz Life Insurance Company of North America ("Allianz"). In the matter now before the Court, the chapter 7 trustee, Warren Agin (the "Trustee"), has objected to the claim of exemption as to one such annuity contract (the "Annuity Policy") on essentially two grounds: first, that it was sold prepetition and is therefore not an asset of the Debtor in which the Debtor can claim an exemption; and second, that the Annuity Policy is not exempt because the Debtor engaged in a so-called prohibited transaction—sale, transfer, or assignment of the Annuity Policy, or use of the Annuity Policy as collateral for a loan—that caused the Annuity Policy to lose its exempt status under the Internal Revenue Code ("IRC"). After an evidentiary hearing and for the reasons stated below, I now overrule the objection.

**Factual Background**

Except where indicated, the following facts were stipulated in the Joint Pretrial Memorandum or at the trial.  The Debtor purchased the Annuity Policy in 2005 from Allianz with a lump sum rollover of funds from a tax qualified retirement account in the amount of $143,866.92.  The Annuity Policy was intended to qualify as an Individual Retirement Annuity ("IRA") under 26 U.S.C. § 408(b).  In their

bankruptcy filing the Debtors identified an interest in three retirement annuities and stated the value of each annuity at the time of filing as "unknown." The only annuity policy that is at issue in this objection is the Annuity Policy as defined above, which policy has an account number that ends with 4003. With their bankruptcy petition, the Debtors also filed a Schedule C, their schedule of property claimed as exempt, and on it elected the "state and non-bankruptcy federal exemptions" and claimed the Annuity Policy as exempt. At the trial the parties stipulated that the Annuity Policy was a tax qualified retirement account; accordingly, unless the actions of the Debtor described below caused the Annuity Policy to lose its qualified status, the Annuity Policy is exempt. The Annuity Policy gave the Debtor a right to a series of annual payments, each in the amount of $7,204.07. The Annuity Policy states that it is not transferable and the entire interest of the "[o]wner is non-forfeitable." Nonetheless, on February 25, 2014, the Debtor entered into an annuity purchase contract (the "Purchase Agreement") with J.G. Wentworth Originations, LLC ("Wentworth") whereby the Debtor received $27,000 and purported to "sell, transfer and assign" the Annuity Policy to Wentworth. Specifically, the Purchase Agreement states that the Debtor was selling the "Annuity Policy" *and* the "right to receive the Purchased Payments," which are defined as, in aggregate, $43,224.42 (a stream of six annual payments at $7,204.07 beginning on 11/19/2014). In an attachment to the Purchase Agreement it states that "[y]ou understand that this transaction is a sale of Your [the Debtor's] Annuity Policy and the Purchased Payments to Us [Wentworth], not a loan. You are selling all right and title in those to Us." (Underscore in the original.)

   The Debtor was not represented by counsel in connection with this transaction, but when he received the Purchase Agreement, he was concerned that it stated that he was selling the Annuity Policy, which he testified was not his intention. He intended to sell only six payments and otherwise to retain ownership of the Annuity. Therefore, he called Wentworth, and, no doubt having heard this

lament from other customers, Wentworth sent him an "addendum" to correct this problem.[1] The addendum is called Waiver of Annuity Policy Transfer and Ownership Addendum (the "Addendum"). The Addendum provides that, "[n]otwithstanding anything to the contrary in the Contract Documents and the Closing Documents, in this transaction, you [the Debtor] are only selling, transferring and assigning your right to receive the Purchased Payments." It also says that "[w]e [Wentworth] hereby waive your obligation to sell, transfer and assign the Annuity Policy itself." Satisfied that he was selling only six payments, the Debtor signed the Purchase Agreement and the Addendum and sent them to Wentworth. In addition, at Wentworth's instruction, he signed and sent a letter to Allianz changing the payee from himself to another entity called R.C. Henderson Trust ("Henderson"), to whom Wentworth had "sold and/or contributed its interest" in the Annuity Policy. He stated in the instructional letter that Henderson was now the payee of the "the following payments: A) 6 annual payments of $7,204.07 each, beginning on 11/19/2014 and ending on 11/19/2019." The Debtor also signed and sent a "Service Request" to Allianz that transferred ownership of the Annuity Policy from himself to Henderson. The form informed the Debtor that "IRS guidelines prohibit any individual other than the annuitant to be the owner of an IRA/SEP," but he signed it anyway. He also changed the beneficiary on the entire Annuity Policy from his wife to Henderson, even though he has repeatedly testified that he never intended to transfer ownership of the Annuity Policy to Wentworth or Henderson.

Also among the closing documents, the Debtor executed a cover letter that accompanied what is styled a Uniform Commercial Code Financing Statement ("UCC"), but also states that it is for "Notice Filing Only." The parties have stipulated that the UCC was filed in the Office of the Secretary of the Commonwealth of Massachusetts to give notice of a lien in favor of Henderson on the Annuity Policy.

---

[1] The addendum offered and admitted at the trial as Exhibit 3 was not signed by Wentworth. But the Trustee has stipulated that the addendum is enforceable as to Wentworth.

The parties have stipulated that the Debtor's intent was to sell the six annual payments to Wentworth (payable to Henderson) and that Wentworth had the same intention, with an obligation to pay the Debtor $27,000. It is also undisputed that Allianz still reflects in its records that the Debtor is the "Owner" of the Annuity Policy. Finally, at least three of the annuity payments of $7,204.07 have gone to Henderson, and the Debtor has paid income taxes on those amounts as he would if he had received the payments himself.

**Positions of the Parties**

The Trustee argues that the series of transactions described above resulted in the loss of the exemption of the retirement account. He says that on February 25, 2014, in return for a payment of $27,000, the Debtor transferred or assigned the entire Annuity Policy to Wentworth and, in turn, to Henderson, in order to secure his assignment to Henderson of the right to receive the six annuity payments. As a result, he argues, the Debtor lost his right to the exemption for one of two reasons: the Annuity Policy is no longer an asset of the estate because it was sold prepetition; or, because the Annuity Policy does not comply with the requirements of the Internal Revenue Code insofar as the transfer constituted a "prohibited transaction" under 26 U.S.C. § 4975 whereby the Annuity Policy was no longer a tax qualified account, or because it was used as collateral for a loan, also a prohibited transaction. Therefore, the Trustee argues, he has a right to recover the account under 11 U.S.C. § 550 and 551 (but he has not yet brought a complaint against a third-party transferee for any such relief). He points out that the Annuity Policy itself makes clear that it cannot be alienated or transferred, but that the Debtor changed the ownership of the fund to Henderson in violation of the Annuity Policy terms. Such violation caused the Annuity Policy to lose the protection of state and federal law, including the protection against "involuntary alienation." The Debtor's instruction to Allianz to make Henderson the owner and beneficiary of the Annuity Policy, *as well as* the recipient of the six payments, made it clear that the Debtor engaged in a prohibited transaction. In the alternative, according to the Trustee, the

4

Debtor's UCC Financing Statement with regard to the Annuity Policy was a prohibited transaction because the owner of a qualified retirement account may not use the account as collateral. 26 U.S.C. § 408(e) (detailing disqualifying events, including the sale of a retirement account and its use as collateral). Thus, the Debtor lost the benefit of state law, MASS. GEN. LAWS ch. 235, § 34A, by not maintaining the retirement account in compliance with the Internal Revenue Code.

The Debtor sees it quite differently. The Debtor says that the facts are clear: he neither sold the Annuity Policy nor used it as collateral. He says that he did nothing more than assign the six payments. He relies on the Addendum to establish these facts. He also relies on the subsequent performance of the Purchase Agreement and the Annuity Policy by both Henderson and Allianz, respectively. It is agreed that Allianz has not changed the name of the owner of the Annuity Policy from the Debtor to Henderson or Wentworth and has merely made the last few payments to Henderson, and that the Debtor has paid income taxes on the payments made to Henderson. The Debtor maintains that, at most, his sale of the payments has resulted in a loss of his right to claim an exemption *in those six payments*.

**Jurisdiction**

The matter before the Court, an objection to claim of exemption, arises under the Bankruptcy Code—specifically § 522(b) (permitting a debtor to claim property as exempt from the bankruptcy estate) and § 522(l) (recognizing that a party in interest may object to a claim of exemption)—and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, codified at LR 201 (D. Mass), referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O). This Court accordingly has authority to enter final judgment in the matter. 28 U.S.C. § 157(b)(1).

**Analysis**

I begin by clarifying precisely what interest of the Debtor in the disputed Annuity Policy is in issue. The Debtor asserts his claim of exemption as to his interest in the Annuity Policy. The Trustee objects to that claim of exemption, both as to the Debtor's remaining interest in the Annuity Policy and as to that portion of the policy that is not presently property of the estate (because the Debtor transferred it to Wentworth's nominee prepetition) but that the Trustee may yet recover for the estate; and with respect to the latter, he asks the Court to rule now that, if he succeeds in recovering the alienated rights, the Debtor may not then claim them as exempt. I understand the Debtor's claim of exemption to extend only to those rights under his Annuity Policy that he did not transfer prepetition, the rights he continued to own on the date of his bankruptcy filing. Only those rights became property of his bankruptcy estate. See 11 U.S.C. § 541(a)(1). The Trustee does not contend otherwise. He has stated an intention to sue to recover those funds, but to date he has neither sued nor recovered the alienated rights. By definition, a claim of exemption pertains to property of the estate. 11 U.S.C. § 522(b)(1) ("an individual debtor may exempt *from property of the estate* . . . "). Therefore, the Trustee's objection as to the transferred rights is premature and accordingly moot. I therefore limit my analysis to the Trustee's objection as it pertains to those rights that the Debtor retained as of the date of his bankruptcy filing.

Commencement of a case under the Bankruptcy Code creates an estate comprised of, among other things and subject to certain exceptions not pertinent here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 522(b)(1) permits a debtor to exempt from the estate either the property listed in paragraph (b)(2) or the property listed in paragraph (b)(3). The Debtors elected the property listed in paragraph (b)(3). This includes, in pertinent part, "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal

6

Revenue Code of 1986," § 522(b)(3)(C).[2] Individual Retirement Accounts and annuities are exempt under 26 U.S.C. § 408 and therefore protected by § 522(b)(1) and (3)(C). The parties have stipulated that the funds in the Annuity Policy met this requirement at the time the Annuity Policy was created.

The Internal Revenue Code defines an Individual Retirement Annuity as one in which the contract is not transferable and not forfeitable. 26 U.S.C. § 408(b). Under 26 U.S.C. § 408(e), if the taxpayer engages in certain "prohibited transactions," the exemption is lost. The prohibited transactions are set forth in §§ 4975 and 408(e) of the Internal Revenue Code. 26 U.S.C. §§ 4975 and 408(e). Among the prohibited transactions are any "direct or indirect" sale of the annuity to a disqualified person[3] and any borrowing "by use of" such annuity account. *Id.*; 26 U.S.C. § 408(e). So, either a sale of the annuity or its use as collateral for a loan may result in a loss of the exemption in that asset. In the event of a prohibited transaction, the Internal Revenue Code provides as follows:

> (A) If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year. For purposes of this paragraph—
>
> > (i) the individual for whose benefit any account was established is treated as the creator of such account, and
> >
> > (ii) the separate account for any individual within an individual retirement account maintained by an employer or association of employees is treated as a separate individual retirement account.
>
> (B) In any case in which any account ceases to be an individual retirement account by reason of subparagraph (A) as of the first day of any taxable year, paragraph (1) of subsection (d) applies as if there were a distribution on such first day in an amount equal to the fair market value (on such first day) of all assets in the account (on such first day).

---

[2] The Debtor relies both on § 522(b)(3)(C) and, in the alternative, via § 522(b)(3)(A) (permitting a debtor who has elected the (b)(3) exemptions to exempt "property that is exempt under . . . State . . . law that is applicable on the date of the filing of the petition,") on MASS. GEN. LAWS ch. 235, § 34A. Because I conclude that the Debtor is entitled to the claimed exemption under § 522(b)(3)(C), I need not and do not determine whether he might also be entitled to exempt the policy under ch. 235, § 34A.

[3] It is undisputed that Wentworth and it nominee, Henderson, are, for present purposes, disqualified persons.

7

26 U.S.C. § 408(e)(2).

The issues in this case are (i) whether the Debtor sold the Annuity Policy or borrowed against it and, if there was a loss of exempt status, (ii) whether the loss extended to the entire annuity or only to part of it.

First, a word on the general principles governing exemptions.  The Trustee has the burden of proving that the Debtor's exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c).  And the Court must construe the exemptions liberally and in favor of the Debtor.  Exemptions should be construed in light of their purposes.  Property that is properly claimed as exempt under the Bankruptcy Code is subtracted from the estate of the debtor so as to ensure that the debtor retains sufficient assets to obtain a fresh start and to provide the debtor with the necessities of life.  Otherwise, a debtor, such as the Debtor here, may have worked and saved for life for retirement and then face old age only to be left destitute.  It is against this backdrop that I consider the impact of the Debtor's actions with respect to his retirement account and his ability to claim it as exempt.

Generally, it is the debtor's burden to establish that the retirement account claimed as exempt is a qualified retirement account under the Internal Revenue Code.  If it is, then by operation of § 522(b)(4)(A), those funds are presumed to be exempt from the estate.  11 U.S.C. § 522(b)(4)(A) ("If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds shall be presumed to be exempt from the estate.").  This burden is most often met where the debtor produces a favorable determination letter from the Internal Revenue Service stating a "favorable determination" as to the qualified nature of the account.  *Id*.  Here, the Debtor did not produce such a letter; but, at the trial, the Trustee stipulated that the Annuity Policy is a qualified retirement account and agreed that the Debtor had therefore met his burden in that regard and was entitled to the statutory presumption of § 522(b)(4)(A) and (B) in favor of

8

exemption. Trans. at 9. The Trustee then agreed that it was his burden to prove that the Annuity Account had lost its protection as a qualified retirement account because the Debtor had engaged in "prohibited transactions."

"Generally speaking, the assets in an individual retirement account are off limits from tax collectors and creditors in bankruptcy." *In re Daley (Daley v. Mostoller)*, 717 F.3d 506, 506 (6th Cir. 2013). "Yet if the owner of a retirement account uses it in a prohibited way, the taxation and bankruptcy protection disappears." *Id*. The Trustee has failed to meet his burden of rebutting the presumption in favor of exemption as to the Annuity Policy. Following are the reasons.

Although the Debtor signed a number of documents that appeared to result in a sale or transfer of the Annuity Policy to either Wentworth or Henderson, which would have been a prohibited transaction, the sale or transfer was never accomplished. The parties stipulated that at the time the Purchase Agreement was signed, Wentworth stated that it "hereby waive[s] [Debtor's] obligation to sell, transfer and assign the Annuity Policy itself[.]" And the parties agree that Allianz has never changed the name of the owner on the Annuity Policy from the Debtor, which makes sense because the parties also stipulate that both parties to the Purchase Agreement intended and understood that the transaction resulted in the transfer only of the right to receive the six payments. Likewise, although the Debtor signed a letter purporting to be a financing using the Annuity Policy as collateral, another prohibited transaction, that financing was a nullity *ab initio* because the Debtor in fact successfully transferred six payments to Henderson. The parties stipulated that Allianz confirmed that Henderson was the payee for the six payments. The transfer of the $27,000 to the Debtor was not a loan but an assignment of the right to receive the six payments and nothing more. Any other result is not supported by the evidence.

I am guided by the Sixth Circuit's opinion in *Daley v. Mostoller (In re Daley)*, 717 F.3d 506, 506 (6th Cir. 2013). In that case a debtor filed a chapter 7 petition. At the time he filed he owned an IRA with Merrill Lynch that was created when he rolled over $64,646 from another retirement account.

9

When the debtor opened the Merrill Lynch account, he signed a series of agreements, including a Client Relationship Agreement that included a pledge of his IRA for any future debts that he might incur with Merrill Lynch. But no other debt ever arose, and he never became indebted to Merrill Lynch. He never opened a margin trading account or engaged in margin trading. The debtor claimed an exemption under 11 U.S.C. § 522(b)(3)(C) for his IRA, but the chapter 7 trustee objected, arguing that the debtor lost his exemption when, by signing the Client Relationship Agreement, he gave Merrill Lynch a lien on the IRA. The bankruptcy judge agreed with the trustee and, on appeal to the district court, the district judge affirmed. The circuit court reversed, principally because "the salient reality is that [the debtor] never borrowed from the IRA and Merrill Lynch never extended credit to [the debtor] based on the existence of the IRA." *Id*. at 508-09. Moreover, '[t]he lien provision was contingent on an event that never occurred[.]" Id. at 509. The circuit court held that where the debtor had merely signed boiler plate language as a requirement of opening an account for rollover of his IRA, the trustee had not met his burden of rebutting the statutory presumption that the retirement account is exempt. The mere possibility that a prohibited transaction might occur was not enough.

  The result is the same here. The Debtor never transferred the Annuity Policy and never borrowed against it. The documents underlying the transaction were internally and irreconcilably inconsistent. They suggested, all at once, that the Debtor was selling his entire Annuity Policy to either Wentworth or Henderson, that he was assigning the Annuity Policy to either Wentworth or Henderson, that he was pledging the Annuity Policy to Wentworth or Henderson, and that he was selling or assigning only the six payments to Henderson. In the end, the facts bear out that the transaction was nothing more than an assignment of six payments aggregating $43,224.42 in exchange for $27,000, not that the Debtor lost his exemption as to the balance of his rights under the Annuity Policy.

  Finally, the trustee's reliance on the case of *Agin v. Daniels (In re Daniels)*, 452 B.R. 335 (Bankr. Mass. 2011), *aff'd* 736 F.3d 70 (1st Cir. 2013), is misplaced. In that case the bankruptcy court held that

10

the debtor had engaged in at least eight substantial transactions prohibited by § 4975.  *Id*. at 349-50. That case involved a series of transactions between the debtor's ERISA-qualified profit sharing plan and several family members and others who had provided services to the plan. The trustee offered no such evidence in this case.

**Conclusion**

For the reasons stated above, I hold (i) that as to the six transferred payments, the Trustee's objection to claim of exemption is premature and therefore moot and (ii) that as to the Debtor's remaining rights under the Annuity Policy, the Trustee's objection must be overruled on the merits. A separate order shall enter accordingly.

Date:  October 4, 2017                            _____
                                                  Frank J. Bailey
                                                  United States Bankruptcy Judge